UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| HARRISON SHAW, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No. 1:18-CV-82-HAB |
| | ) |
| AUTO HANDLING CORPORATION, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Harrison Shaw ("Shaw") claims that Defendants[1] discriminated against him because of his race by subjecting him to a racially hostile work environment and terminating him without cause. Defendants disagree and have moved for summary judgment. (ECF No. 198). That motion is now fully briefed (ECF Nos. 201, 252, 272) and ready for ruling.

**I.      Factual Background**

JCTC is a transport company responsible for shipping finished vehicles from General Motor's Fort Wayne, Indiana, plant to dealerships. Shaw was hired by JCTC through a temp agency in May 2016 as a second shift yard supervisor. He reported to Kevin Tumbleson ("Tumbleson"), JCTC's yard superintendent.

After Shaw had been on the job for a few months, Tumbleson assigned another yard supervisor, Arturo Pena ("Pena"), to shadow Shaw and assess whether Shaw should be hired on full-time. Other employees began to tell Shaw that Pena didn't like him. This matched Shaw's

---

[1] The two corporate Defendants filed for Chapter 11 bankruptcy in August 2019 and were dissolved as of November 2019 after their assets were sold. New entities were formed to acquire the assets and operate the business related to the assets. The corporate entity that now operates the business where all these events took place is called Jack Cooper Transport Company, LLC ("JCTC"). For simplicity's sake, the Court will refer to Shaw's employer JCTC in this Opinion.

experience, as Shaw testified that Pena was "not very warming," "unapproachable" and "treated [Shaw] like [Pena] never really wanted [Shaw] there." Shaw believes that neither Pena nor Tumbleson like black people.

Pena's treatment weighed on Shaw. In August 2016, Shaw texted Tumbleson complaining that Pena wanted to get Shaw fired. Shaw said in the text that he planned to submit his two-weeks' notice the next Monday. Shaw does not dispute that he sent the text, but states that he did not plan to quit. Instead, he says that he sent the text because of how Tumbleson and Pena were treating him.

Tumbleson was no fan of Shaw. Tumbleson reported to Nicole Ortiz ("Ortiz"), a JCTC HR representative, that Shaw could not accept criticism and would not follow directions. Tumbleson noted issues with Shaw "helping get railcar numbers" and "not doing them in the right order."

More importantly, Tumbleson had asked Shaw to hold everyone on his shift on overtime, consistent with a directive from Tumbleson's boss. Shaw held no one on overtime, causing the second shift to fall short on a goal JCTC had informed General Motors it would meet. This caused issues for Tumbleson. Following this incident, Tumbleson told Ortiz that he "didn't need [Shaw] on [Tumblson's] shifts anymore." Shaw was terminated by JCTC in September 2016.

Shaw does not think that he was treated like a supervisor during his employment. He testified that management would act like he wasn't there and would go into his office without acknowledging him. Shaw also noted times when his fellow supervisors would form circles for discussions and omit him from the circle. Shaw noted a time when a female employee reported harassment by yard supervisor Brad Atchison ("Atchison") but, despite Shaw taking the initial report, he was left out of later discussions of the allegation.

Shaw also complains of several racial incidents during his employment, most involving Tumbleson. Tumbleson would point out a group of black employees and say, "that's a problem waiting to happen," or "look, another drug deal gone bad." Tumbleson also told Shaw that Colin Kaepernick should "take his black ass back to Africa" after the quarterback took a knee during the national anthem. Shaw also claims that Tumbleson told Shaw not to call the only black employees on second shift in to work, calling the employees "lazy."

## II.    Legal Analysis

### A.    *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences

3

in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.**     ***Shaw Cannot Show a Hostile Work Environment***

Shaw alleges two discrimination-based claims: racially hostile environment and disparate treatment. The Court will address each in turn.

To recover on his claim for a racially hostile work environment under Title VII, Shaw must establish that: (1) the work environment was both subjectively and objectively offensive; (2) race was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Hancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). When assessing whether a work environment is hostile, courts will look at the totality of the circumstances and specifically to: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Rodgers v. W.– S. Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993). Relatively isolated incidents of trivial misconduct do not support a hostile environment claim. *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993).

Shaw identifies only three instances[2] in support of his hostile work environment claim: Tumbleson's Kaepernick statement, the "drug deal gone bad" comment, and Tumbleson's concerns about too many black employees gathered on the yard. (ECF No. 252 at 3). It is true that

---

[2] Shaw designates many of the same facts that the other Plaintiffs designate, including racist statements by Tumbleson. But unlike the other Plaintiffs, there is no evidence that Shaw was aware of Tumbleson's statements or the other racist incidents.

4

there is no "magic number" of instances that create a hostile work environment. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017). That there are only three instances, then, is not determinative. But what is determinative is that these instances are neither "pervasive" nor "severe." Tumbleson's comments are all less severe than the use of the n-word or other racial epithets that have supported a hostile work environment claim despite isolated instances. *See Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 950-51 (7th Cir. 2005). And the Court does not find the three instances, taken together, to be "extreme" or numerous enough to be pervasive. *E.E.O.C. v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018). Finally, there is no evidence that the conduct affected Shaw's ability to work. *Hambrick v. Kijakazi*, --- F.4th ---, 2023 WL 5319242, at *4 (7th Cir. Aug. 18, 2023) ("[i]nsults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance").

Luckily for Defendants, the nation's discrimination laws "do not mandate admirable behavior from employers." *Johnson v. Advoc. Health and Hospitals Corp.*, 892 F.3d 887, 901 (7th Cir. 2018). Nothing about the conduct of JCTC's employees toward Shaw makes the Court want to seek a job there. But more is required for a legally actionable hostile work environment, and Shaw has not designated that kind of evidence. Defendants are entitled to summary judgment on this claim.

**C.**     ***Shaw Cannot Shaw that JCTC had a Pattern and Practice of Discrimination***

Shaw has chosen to shun a normal disparate treatment claim and instead present a pattern and practice claim. "Pattern-or-practice claims, like [disparate treatment] claims, represent a theory of intentional discrimination." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). A pattern or practice claim "require[s] a 'showing that an employer regularly and purposefully

5

discriminates against a protected group.'" *Id*. A plaintiff bringing a pattern-or-practice claim is required to prove "that discrimination 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Id*. (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

Defendants, relying on *Lowery v. Circuit City Stores, Inc*., 158 F.3d 742 (4th Cir. 1998), argue that Shaw, as an individual, non-class claimant, cannot use the pattern and practice method to prove disparate treatment. The United States Supreme Court granted certiorari and vacated *Lowery*, 527 U.S. 1031 (1999), so the Court cannot rely on it. Instead, the Court will follow Seventh Circuit jurisprudence in treating pattern and practice evidence as relevant to the pretext issue. *See Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 553-53 (7th Cir. 2000).

Disparate treatment claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies created by *McDonnell Douglas. v. Green*, 411 U.S. 792 (1973). *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015) (noting the *McDonnell Douglas* framework is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence – evidence that similarly situated employees not in the plaintiff's protected class were treated better – would permit a jury to infer discriminatory intent."). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas* a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced).

Still, in all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846

6

F.3d at 224; *see also See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (instructing courts to stop separating "direct" from "indirect" evidence and instructing, instead, that the test is "simply whether the evidence would permit a reasonable factfinder to conclude the plaintiff's [protected status] caused the discharge or other adverse employment action). *Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

Under the burden shifting method, Shaw must first establish several prima facie elements of discrimination. To successfully set forth a prima facie case of racial discrimination, Shaw must show that: 1) he is a member of a protected class; 2) he was meeting his employer's legitimate performance expectations; 3) he suffered an adverse employment action; and 4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

If Shaw establishes a prima facie case, the burden of production shifts to Defendants to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id*. If Defendants carry this burden, Shaw must show that Defendants' purported reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. *Id*. at 143. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*. (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The Court concludes that Shaw's inability to demonstrate pretext for his firing dooms his claim. *See Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990) (where

7

plaintiff has not shown pretext, it is not necessary to decide whether a prima facie case has been made). JCTC has identified Shaw's failure to keep his workers on overtime, in direct contravention of Tumbleson's order, as the basis for Shaw's firing. Shaw doesn't even discuss this incident, instead focusing on a separate incident that JCTC has never asserted as the basis for Shaw's firing. (ECF No. 252 at 5). Because Shaw has failed to argue, much less prove, that JCTC's stated reason for firing him was pretext[3], that firing "must stand." *McDonnell Douglas*, 411 U.S. at 807.

*McDonnell Douglas* burden shifting aside, the Court finds no evidence that would allow a jury to find intentional race discrimination toward Shaw. As noted above, the harassment of which Shaw claims was non-severe and sporadic. There is nothing overtly racial about the circumstances of his firing. There is little, if anything, in the record to even suggest that race played a role in any of the employment decisions JCTC made regarding Shaw. There is no evidence of race-based discrimination for Shaw's termination, and summary judgment for Defendants is appropriate.

**III.   Conclusion**

For these reasons, Defendants' motion for summary judgment (ECF No. 198) is GRANTED.

SO ORDERED on September 5, 2023.

       s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[3] Because Shaw does not argue that JCTC's reason for firing him was pretext, the pattern and practice evidence on which he wants to rely is irrelevant. *Bell*, 232 F.3d at 553-53.