UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ROYAL JORDAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 1:18-CV-82-HAB |
| ) | |
| AUTO HANDLING CORPORATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff Royal Jordan ("Jordan") claims that Defendants[1] discriminated against him because of his race by subjecting him to a racially hostile work environment, terminating him without cause, and retaliating against him for reporting racist behavior in the workplace. Defendants disagree and have moved for summary judgment. (ECF No. 202). Jordan did not respond, and the time to do so has passed. The motion is now ready for ruling.

**I.   Factual Background**

Because Jordan has not responded to the summary judgment motion, the Court accepts Defendants' designated facts as true. JCTC is a transport company responsible for shipping finished vehicles from General Motor's Fort Wayne, Indiana, plant to dealerships. Jordan was hired by JCTC through a temp agency in August 2016 as a scanner, responsible for organizing inventory. After six months, he was hired full-time as a second shift rail supervisor. Jordan supervised four employees, and his primary responsibility was to track and organize trucks

---

[1] The two corporate Defendants filed for Chapter 11 bankruptcy in August 2019 and were dissolved as of November 2019 after their assets were sold. New entities were formed to acquire the assets and operate the business related to the assets. The corporate entity that now operates the business where all these events took place is called Jack Cooper Transport Company, LLC ("JCTC"). For simplicity's sake, the Court will refer to Jordan's employer JCTC in this Opinion.

throughout the yard. He reported to Kevin Tumbleson ("Tumbleson"), JCTC's yard superintendent.

Unlike almost every other Plaintiff, Jordan and Tumbleson were friendly, if not friends. Tumbleson once gave Jordan a ride home, visited Jordan in the hospital after his wife gave birth to the couple's child, and advocated for Jordan to get a raise. Tumbleson also intervened once when Jordan came to work after drinking, sending him home for the day rather than firing him on the spot.

Jordan had a history of performance issues after being hired on full-time. He received a written reprimand in October 2017 for issues with productivity, efficiency, and job performance. He received a second written reprimand for the same issues in January 2018. Tumbleson was forced to counsel Jordan in February 2018 for failing to complete "observations and audits," a daily responsibility for JCTC supervisors.

The performance issues culminated in February 2018 when Tumbleson sent Jordan a text message asking him to come in early so that Jordan could train with a more senior supervisor. Jordan replied that he was not coming in because there were no rail cars to process that day. Jordan then called Tumbleson, and Tumbleson again explained that he wanted Jordan to train with the more senior supervisor. Jordan again refused and was terminated as a result.

Like the other Plaintiffs, Jordan testified that he experienced racial incidents during his employment with JCTC. Once, Tumbleson made a joke that Jordan was a "drug dealer." On another occasion, Jordan was part of an email chain where a JCTC employee joked about "whiting out MLK," referencing the Martin Luther King, Jr., national holiday. These were the only two incidents where Jordan personally felt he experienced a hostile work environment.

**II.      Legal Analysis**

**A.      *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

Although Jordan's failure to respond requires the Court to consider Defendants' factual assertions admitted, summary judgment for the movant is not automatic. *Raymond v. Ameritech*

3

*Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The ultimate burden remains with Defendants to show that they are entitled to judgment as a matter of law. *Id*.

**B.** ***Jordan Cannot Show a Hostile Work Environment***

Jordan has alleged three discrimination-based claims: racially hostile work environment, disparate treatment, and retaliation. The Court will address each in turn.

To recover on his claim for a racially hostile work environment under Title VII, Jordan must establish that: (1) the work environment was both subjectively and objectively offensive; (2) race was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Hancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). When assessing whether a work environment is hostile, courts will look at the totality of the circumstances and specifically to: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Rodgers v. W.– S. Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993). Relatively isolated incidents of trivial misconduct do not support a hostile environment claim. *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993).

The facts reveal only two incidents that could support Jordan's hostile work environment claim: Tumbleson's joke about Jordan being a "drug dealer" and the MLK email. It is true that there is no "magic number" of instances that create a hostile work environment. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017). That there are only two instances, then, is not determinative. But what is determinative is that these instances are neither "pervasive" nor "severe." Tumbleson's comment and the email are both less severe than the use of the n-word or other racial epithets that have supported a hostile work environment claim despite isolated instances. *See Cerros v. Steel*

4

*Techs., Inc.*, 398 F.3d 944, 950-51 (7th Cir. 2005). And the Court does not find the two instances, taken together, to be "extreme" or numerous enough to be pervasive. *E.E.O.C. v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018). Finally, there is no evidence that the conduct affected Jordan's ability to work. *Hambrick v. Kijakazi*, --- F.4th ---, 2023 WL 5319242, at *4 (7th Cir. Aug. 18, 2023) ("[i]nsults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance").

Luckily for Defendants, the nation's discrimination laws "do not mandate admirable behavior from employers." *Johnson v. Advoc. Health and Hospitals Corp.*, 892 F.3d 887, 901 (7th Cir. 2018). Nothing about the conduct of JCTC's employees toward Jordan makes the Court want to seek a job there. But more is required for a legally actionable hostile work environment, and Jordan has not designated that kind of evidence. Defendants are entitled to summary judgment on this claim.

**C.**    ***Jordan Cannot Show Disparate Treatment***

Disparate treatment claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies created by *McDonnell Douglas. v. Green*, 411 U.S. 792 (1973). *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015) (noting the *McDonnell Douglas* framework is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence – evidence that similarly situated employees not in the plaintiff's protected class were treated better – would permit a jury to infer discriminatory intent."). Still, in all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also*

5

*See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (instructing courts to stop separating "direct" from "indirect" evidence and instructing, instead, that the test is "simply whether the evidence would permit a reasonable factfinder to conclude the plaintiff's [protected status] caused the discharge or other adverse employment action). *Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination.").

Under the burden shifting method, Jordan must first establish several prima facie elements of discrimination. To successfully set forth a prima facie case of racial discrimination, Jordan must show that: 1) he is a member of a protected class; 2) he was meeting his employer's legitimate performance expectations; 3) he suffered an adverse employment action; and 4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

If Jordan establishes a prima facie case, the burden of production shifts to Defendants to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id*. If Defendants carry this burden, Jordan must show that Defendants' purported reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. *Id*. at 143. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*. (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The Court concludes that Jordan's inability to demonstrate pretext for his firing dooms his claim. *See Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990) (where plaintiff has not shown pretext, it is not necessary to decide whether a prima facie case has been made). Jordan received two written reprimands for performance issues and was counseled by

Tumbleson for failing to perform a fundamental part of his job. Jordan was ultimately terminated for refusing to come to work. These facts, taken together, are more than enough for Defendants to show a non-pretextual reason for Jordan's firing. Defendants are entitled to summary judgment on Jordan's disparate treatment claim.

**D.**     ***Jordan Cannot Show Retaliation***

Jordan has also brought a claim for retaliation. In pursuing such a claim under Title VII, "plaintiffs must offer evidence of three elements: (1) they engaged in protected activity, (2) they suffered adverse employment actions, and (3) there was a causal connection between the protected activity and the adverse employment actions." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). The same burden-shifting under *McDonnell Douglas* that applies to the discrimination case also applies to Plaintiff's retaliation claim. *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000).

Jordan's retaliation claim fails for much the same reason as his discrimination claim. There is ample, undisputed evidence in the record showing a non-retaliatory reason for his firing. Even if Jordan engaged in protected activity (it's not clear what that might be), there is no causal relationship between that activity and his adverse employment action. Like his disparate treatment claim, Jordan's retaliation claim will fall at the summary judgment stage.

**III.**     **Conclusion**

For these reasons, Defendants' motion for summary judgment (ECF No. 202) is GRANTED.

SO ORDERED on September 6, 2023.

                                        s/ Holly A. Brady
                                        CHIEF JUDGE HOLLY A. BRADY
                                        UNITED STATES DISTRICT COURT