UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DENNIS SEIP, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 1:18-CV-82-HAB |
| ) | |
| AUTO HANDLING CORPORATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff Dennis Seip ("Seip"), who is white, claims that Defendants[1] fired him after he refused to draft an untrue statement during the investigation of a black coworker. Defendants disagree and have moved for summary judgment. (ECF No. 210). That motion is now fully briefed (ECF Nos. 213, 244, 270) and ready for ruling.

**I.   Factual Background**

**A.   *JCTC, its Hiring Practices, and Seip***

JCTC is a transport company responsible for shipping finished vehicles from General Motor's Fort Wayne, Indiana, plant to dealerships. Seip began working for JCTC in July 2015. Like all JCTC employees, Seip began as a "casual." Casuals are on-call employees. When a full-time employee called off because of illness or vacation, a supervisor would go down a "casual list" and call casuals until he had covered the needed positions. Casuals were paid the same as full-time

---

[1] The two corporate Defendants filed for Chapter 11 bankruptcy in August 2019 and were dissolved as of November 2019 after their assets were sold. New entities were formed to acquire the assets and operate the business related to the assets. The corporate entity that now operates the business where all these events took place is called Jack Cooper Transport Company, LLC ("JCTC"). For simplicity's sake, the Court will refer to Seip's employer JCTC in this Opinion.

employees and performed the same jobs. The primary differences between the two classes of employees were that full-time employees had set schedules and benefits.

**B.**     *Seip Reports a Co-Worker's Racist Epithet*

In April 2016, Seip was riding in a JCTC shuttle van with other employees, including Roxanne Swygart ("Swygart"), a white woman. During a cell phone call Swygart said, "keep the nigs out of the yard." Seip believed this was a reference to two black co-workers. Seip reported the comment to one of those co-workers, Jarren Austin ("Austin"), shortly after the comment was made. Austin, in turn, reported the comment to a supervisor.

JCTC investigated Swygart's comment. As part of that investigation, Seip met with Kevin Tumbleson ("Tumbleson"), JCTC's yard superintendent, Swygart, and two union representatives. Swygart denied making the comment, and Seip accused Swygart of lying. Tumbleson and the union representatives told Seip to "let it go" and to "be careful who your friends are." According to Seip, this was the day he "became a problem with Jack Cooper . . . and the union."

Following the investigation, Seip's hours declined. Seip believes that he went from working five or six days a week down to two or three. This is not borne out by the records. Seip was called in to work 20 times in March 2016, 15 times in April (when he allegedly made the comment), 16 times in May, and 19 times in June. While Seip was undeniably called in less following the investigation into Swygart's comments, JCTC describes the difference as the "normal week-to-week fluctuation in the number of calls casuals receive."

**C.**     *Seip Refuses to Draft a Statement Regarding Austin*

In April 2017, a female employee of JCTC accused Austin of sexual harassment. Tumbleson was charged by JCTC with collecting statements from Austin's co-workers regarding their observations of Austin's conduct. As part of collecting these statements, Tumbleson asked

2

Seip to "write a statement against [Austin] about what was going on in the yard." Seip refused. Tumbleson then told Seip that he would be fired if he did not draft the statement. Seip did not write the statement. Instead, Seip went to Austin and told him about Tumbleson's request. Seip promised Austin that he would not write a statement that would be a lie and that he was not going to help get anyone fired. Following this incident, Seip was told by two different supervisors that Tumbleson told the supervisors not to call Seip for work.

**D.**   *Seip Gets Fired*

Around the same time that Seip refused to write the statement against Austin in April 2017, Tumbleson claims that he began receiving reports complaining about Seip's work. Seip was reportedly "not pulling his weight," and other employees were having to go back and do Seip's work. Tumbleson wanted to have a conversation with Seip about the complaints, so he told supervisors not to call Seip into work until the next week. Not calling casuals into work was how discipline of casuals was handled, as there was no procedure for issuing written reprimands to casuals.

Having received no calls for work, Seip called Tumbleson to ask why. The parties dispute whether Seip was upset during the call. Tumbleson claims that Seip cursed at him during the call, a claim Seip denies. The parties agree that, at the conclusion of the call, Tumbleson told Seip that Seip would no longer be called in to work. Seip believes this conversation took place on April 19, 2017.

**E.**   *Seip's Claims of Racism*

According to Seip, Tumbleson was "openly racist." Tumbleson would regularly assign harder jobs to black employees. When black employees were called the n-word or lazy, Tumbleson

3

would do nothing. On the other hand, Tumbleson would refer to himself as the "head nigger in charge."

## II. Legal Discussion

### A. *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

B.      *Seip's Retaliation Claim Survives*

Seip alleges that his termination was retaliation for refusing to draft the statement about Austin.[2] (ECF No. 244 at 4–5). In pursuing such a claim under Title VII, "plaintiffs must offer evidence of three elements: (1) they engaged in protected activity, (2) they suffered adverse employment actions, and (3) there was a causal connection between the protected activity and the adverse employment actions." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). The same burden-shifting under *McDonnell Douglas* that applies to discrimination claims also applies to Seip's retaliation claim. *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). Seip, however, has not responded using the burden shifting method, so the Court will not analyze his claim that way.

Relying on *Hatmaker v. Mem. Med. Ctr.*, 619 F.3d 741 (7th Cir. 2010), Defendants argue that Seip's refusal to participate in the investigation of Austin is not protected activity under Title VII because "investigation," as used in the law, does not apply to internal investigations by employers. If Seip was claiming that he was retaliated against for participating in an investigation, then Defendant's argument would have merit. But that is not how the Court reads either the complaint or Seip's arguments in his brief.

As the Court understands Seip's argument, he is claiming that he was fired because he refused to cooperate in Tumbleson's racist attempts to fire Austin on trumped-up charges of sexual harassment. Taking the facts in a light most favorable to Seip, this is plainly protected activity

---

[2] Seip's brief does not mention his report of Swygart's racial epithet or any other action as the required protected activity. The Court, then, will analyze only what he does argue.

5

even if it occurred during an internal investigation. The Supreme Court clarified this in *Crawford v. Metro. Government of Nashville and Davidson Cty., Tenn.*, 555 U.S. 271, 277 (2009):

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, without writing public letters, taking to the streets, or resisting the government. And we would call it "opposition" if an employee took a stand against an employer's discriminatory practices not by "instigating" action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons. There is, then, no reason to doubt that a person can "oppose" by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.

If Seip believed that Tumbleson was acting in a racist manner and opposed that effort, he was engaged in protected activity no matter the context in which the opposition was made.

The only remaining question, then, is whether there is a causal connection between Seip's termination and his refusal to draft the statement. The Court concludes that there is at least a genuine issue of material fact on this issue. After all, Seip has designated evidence that Tumbleson expressly told Seip he would be fired if he did not draft the statement. Tumbleson's statement, coupled with the almost immediate, and unprecedented, reports of Seip's work issues and termination, are enough for a jury to reasonably conclude that Seip was fired in retaliation for engaging in protected activity.

The Court recognizes that JCTC has attempted to show a non-discriminatory reason for Seip's termination, that being the work issues and Seip's conduct during the subsequent phone call with Tumbleson. But Seip's conduct during the phone call is very much disputed, and the extremely short period of time between Seip's refusal and his firing is certainly suspicious. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (suspicious timing can show

6

discrimination in "extreme cases" where the adverse impact comes "on the heels" of the protected activity). JCTC's explanation notwithstanding, the Court finds that Seip has designated enough evidence to support a jury verdict of intentional discrimination.

### III.     Conclusion

For these reasons, Defendants' motion for summary judgment (ECF No. 210) is DENIED.

SO ORDERED on September 11, 2023.

                                            s/ Holly A. Brady
                                           CHIEF JUDGE HOLLY A. BRADY
                                           UNITED STATES DISTRICT COURT