UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CORNELIUS LACEY, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Cause No. 1:18-CV-82-HAB |
| | ) |
| AUTO HANDLING CORPORATION, et al., | ) |
| | ) |
|     Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Cornelius Lacey ("Lacey") claims that Defendants[1] discriminated against him because of his race by subjecting him to a racially hostile work environment and refusing to hire him to a full-time position. Defendants disagree and have moved for summary judgment. (ECF No. 206). That motion is now fully briefed (ECF Nos. 209, 249, 268) and is ready for ruling.

**I.    Factual Background**

**A.    *JCTC, its Hiring Practices, and Lacey***

JCTC is a transport company responsible for shipping finished vehicles from General Motor's Fort Wayne, Indiana, plant to dealerships. Lacey began working at JCTC in March 2014. Like all JCTC employees, Lacey began as a "casual." Casuals are on-call employees. When a full-time employee called off because of illness or vacation, a supervisor would go down a "casual list" and call casuals until he had covered the needed positions. Casuals were paid the same as full-time

---

[1] The two corporate Defendants filed for Chapter 11 bankruptcy in August 2019 and were dissolved as of November 2019 after their assets were sold. New entities were formed to acquire the assets and operate the business related to the assets. The corporate entity that now operates the business where all these events took place is called Jack Cooper Transport Company, LLC ("JCTC"). For simplicity's sake, the Court will refer to Lacey's employer JCTC in this Opinion.

employees and performed the same jobs. The primary differences between the two classes of employees were that full-time employees had set schedules and benefits.

Lacey's primary antagonist was Kevin Tumbleson ("Tumbleson"), JCTC's yard superintendent. Tumbleson was the individual responsible for promoting casuals to full-time employees. Part of Tumbleson's process in making hiring determinations was to ask different individuals, including other supervisors and senior employees, what they thought of an individual and whether that individual should be promoted to a full-time employee. Lacey agrees that work ethic and how often a casual responds to a call to work were the markers that JCTC used to determine who was promoted. There was no set time for a casual to be promoted, but many employees were casuals for more than a year.

JCTC's attendance records do not reflect positively on Lacey's tenure as a casual. There were four incidents from March to June 2016 where Lacey answered JCTC's calls but refused shifts, and another three incidents from April to June 2016 when he did not answer JCTC's call. While Lacey argues that the call log records were "sometimes" inaccurate, he does not challenge any specific incident as being inaccurate. Lacey also admitted to refusing to answer calls from JCTC where the call was for weekend work, although he claims he never refused a weekend shift.

Lacey was also involved in an accident while a casual that damaged a JCTC vehicle. Lacey admits that accidents usually resulted in a casual losing their job, but Lacey was not fired for the incident. In fact, Lacey was hired on full-time in October 2017. As far as the Court can tell, he continues to work there now.

Like the other Plaintiffs, Lacey complains of several instances of alleged racist behavior at JCTC. While Lacey admits to never hearing a manager or supervisor say anything negative about his or another employee's race, he does claim that Tumbleson would reprimand him for certain

things, like standing around, while letting similar conduct by other employees slide. Lacey also points to second-hand reports of a supervisor posting something "questionable" on Facebook about the Black Lives Matter movement and a manager accusing black employees of being drug dealers. Lacey also reports that JCTC managers and employees would refer to the predominantly black workforce of VASCOR, a JCTC contractor, as the "chain gang." Finally, Tumbleson told Lacey's supervisor, Harrison Shaw ("Shaw"), not to call Lacey in to work because Lacey was lazy.

## II.     Legal Analysis

### A.     *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences

3

in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.**     ***Lacey Cannot Show a Hostile Work Environment***

Lacey alleges two discrimination-based claims: racially hostile work environment and disparate treatment. The Court will address each in turn.

To recover on his claim for a racially hostile work environment under Title VII, Lacey must establish that: (1) the work environment was both subjectively and objectively offensive; (2) race was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Hancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). When assessing whether a work environment is hostile, courts will look at the totality of the circumstances and specifically to: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Rodgers v. W.– S. Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993). Relatively isolated incidents of trivial misconduct do not support a hostile environment claim. *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993).

Lacey identifies only one instance[2] in support of his hostile work environment claim: Tumbleson told Shaw not to call Lacey and another Plaintiff, Jarren Austin, in to work because they were "lazy." (ECF No. 249 at 3). It is true that there is no "magic number" of instances that

---

[2] Lacey designates many of the same facts that the other Plaintiffs designate, including racist statements by Tumbleson. But unlike the other Plaintiffs, there is no evidence that Lacey was aware of Tumbleson's statements or the other racist incidents.

4

create a hostile work environment. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017). That there was only one instance, then, is not determinative. But what is determinative is that this instance was neither "pervasive" nor "severe." Tumbleson's comment is less severe than the use of the n-word or other racial epithets that have supported a hostile work environment claim despite isolated instances. *See Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 950-51 (7th Cir. 2005). And the Court does not find the single instance to be "extreme" or numerous enough to be pervasive. *E.E.O.C. v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018). Finally, there is no evidence that the conduct affected Lacey's ability to work. *Hambrick v. Kijakazi*, --- F.4th ---, 2023 WL 5319242, at *4 (7th Cir. Aug. 18, 2023) ("[i]nsults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance").

Luckily for Defendants, the nation's discrimination laws "do not mandate admirable behavior from employers." *Johnson v. Advoc. Health and Hospitals Corp.*, 892 F.3d 887, 901 (7th Cir. 2018). Nothing about the conduct of JCTC's employees toward Lacey, including many not relied on by Lacey, makes the Court want to seek a job there. But more is required for a legally actionable hostile work environment, and Lacey has not designated that kind of evidence. Defendants are entitled to summary judgment on this claim.

C. *Lacey Cannot Show that JCTC had a Pattern and Practice of Discrimination*

Lacey has chosen to shun a normal disparate treatment claim and instead present a pattern and practice claim. "Pattern-or-practice claims, like [disparate treatment] claims, represent a theory of intentional discrimination." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). A pattern or practice claim "require[s] a 'showing that an employer regularly and purposefully discriminates against a protected group.'" *Id*. A plaintiff bringing a pattern-or-practice claim is

5

required to prove "that discrimination 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Id*. (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

Defendants, relying on *Lowery v. Circuit City Stores, Inc*., 158 F.3d 742 (4th Cir. 1998), argue that Johnson, as an individual, non-class claimant, cannot use the pattern and practice method to prove disparate treatment. The United States Supreme Court granted certiorari and vacated *Lowery*, 527 U.S. 1031 (1999), so the Court cannot rely on it. Instead, the Court will follow Seventh Circuit jurisprudence in treating pattern and practice evidence as relevant to the pretext issue. *See Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 553-53 (7th Cir. 2000).

Disparate treatment claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies created by *McDonnell Douglas. v. Green*, 411 U.S. 792 (1973). *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015) (noting the *McDonnell Douglas* framework is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence – evidence that similarly situated employees not in the plaintiff's protected class were treated better – would permit a jury to infer discriminatory intent."). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas* a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced).

Still, in all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)

(instructing courts to stop separating "direct" from "indirect" evidence and instructing, instead, that the test is "simply whether the evidence would permit a reasonable factfinder to conclude the plaintiff's [protected status] caused the discharge or other adverse employment action). *Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

Under the burden shifting method, Lacey must first establish several prima facie elements of discrimination. To successfully set forth a prima facie case of racial discrimination, Lacey must show that: 1) he is a member of a protected class; 2) he was meeting his employer's legitimate performance expectations; 3) he suffered an adverse employment action; and 4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

If Lacey establishes a prima facie case, the burden of production shifts to Defendants to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id*. If Defendants carry this burden, Lacey must show that Defendants' purported reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. *Id*. at 143 "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id*. (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Lacey's claim for disparate treatment fails because Defendants have shown a legitimate, non-pretextual reason for the delay in hiring him on full-time. *See Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990) (where plaintiff has not shown pretext, it is not

7

necessary to decide whether a prima facie case has been made). Lacey does not dispute that he regularly failed to answer calls for work or accept shifts when offered. And he does not dispute that those factors, work ethic and reliability, are how JCTC made employment decisions. He also does not dispute that he was involved in an accident with property damage, normally an offense resulting in termination. There is no evidence of pretext here, dooming Lacey's disparate treatment claim.

Lacey's attempt to use pattern and practice evidence to bolster his pretext argument also fails. It is little exaggeration to state that Lacey has designated nothing that demonstrates a pattern and practice by JCTC to discriminate against African American employees. Lacey has designated no statistical evidence, the "core" of a pattern and practice claim. *Bell*, 232 F.3d at 553. Rather, almost comically, Lacey has moved to strike the only statistical evidence—evidence designated by Defendants. (ECF No. 240).[3] The most probative type of evidence in a pattern or practice case is missing here.

Rather than present statistical evidence, Lacey asks the Court to consider all the facts designated by the eight other Plaintiffs in response to Defendants' motions for summary judgment against those Plaintiffs. As noted above, this kind of evidence is relevant to evaluating pretext. But it is also true that when, as here, the claim is presented as individual claimants rather than a class, Defendants can prevail by providing non-pretextual reasons for each termination. *Coates v. Johnson & Johnson*, 756 F.2d 524, 533 (7th Cir. 1985). Even if the Court considers the full context of all alleged racist treatment of African American employees at JCTC, it cannot conclude that

---

[3] Because the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate, the Court denies the Plaintiffs' Motion to Strike. The Court has noted the Plaintiff's objections and will consider the objections when they arise in the Court's summary judgment analysis.

JCTC's explanation for terminating *Lacey* was pretextual. Lacey's shortcomings, most of which are undisputed, were more than enough for a non-pretextual delay in promotion.

In short, there is simply no evidence in the record that Lacey remained a casual for any reason other than his work performance. Nor is there evidence that JCTC has racism so ingrained in its corporate culture that JCTC's explanation for its decision on Lacey's employment should be questioned. This lack of pretext is enough to defeat Lacey's claim.

### III. Conclusion

For these reasons, Defendants' motion for summary judgment (ECF No. 206) is GRANTED.

SO ORDERED on September 12, 2023.

                                               s/ Holly A. Brady
                                               CHIEF JUDGE HOLLY A. BRADY
                                               UNITED STATES DISTRICT COURT